UNITED STATES of America,
Plaintiff-Appellee,

v,

Mark Edward HARRIS and Robert Piper, Defendants-Appellants.

Nos. CA 82–1755, CA 82–1754.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1984.

Decided July 30, 1984.

Douglas Low, Sacramento, Cal., for plaintiff-appellee.

Brian Leighton, Asst. U.S. Atty., Fresno, Cal., for defendants-appellants.

Before WALLACE, KENNEDY, and CANBY, Circuit Judges

CANBY, Circuit Judge:

A jury convicted Robert Piper and Mark Harris of conspiracy to import marijuana and importation of marijuana. In this appeal, they raise numerous objections to their convictions, the most substantial being Piper's claim that the government's use of an informer violated his sixth amendment right to counsel and their joint claim that the district court improperly instructed the jury not to speculate about the guilty pleas entered by codefendants. We affirm.

## I. Denial of The Right to Counsel

The federal government indicted Piper on December 17, 1981. In January, after the indictment but before Piper's arrest, Piper met with Leland Mansuetti, an undercover informant working for the State of California. California had been conducting an undercover investigation into Piper's activities for several months prior to the January meeting. The state suspected that Piper was selling illegal arms and was also investigating him for drug dealings unconnected with the transactions which gave rise to Piper's federal indictment. California officials notified the federal government of the meeting prior to its occurrence and were in turn told by the federal government of Piper's indictment. However, the California authorities did not convey any information about the pending federal charges to the state's undercover informant. Nor did the informant have any independent knowledge of Piper's federal indictment. During the course of the meeting with Mansuetti, Piper made incriminating statements about his involvement in the federal crimes. The statements were subsequently used by the government in Piper's federal trial.

In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court held that the government violated an indicted defendant's right to counsel when its informant "deliberately elicited" incriminating statements from the defendant in the absence of counsel. *Id.* at 206, 84 S.Ct. at 1203. Piper argues that the government's conduct in this case falls within the bounds proscribed by *Massiah.*

The government urges us to construe *Massiah* narrowly; specifically, it asks us to hold that *Massiah*'s requirement of "deliberate" action is met only if the informant is expressly instructed to acquire information about the charged crimes. Under such an interpretation, of course, no sixth amendment violation occurred in this case

as the informant had no knowledge of the federal crimes.[1]

■ The government's interpretation of *Massiah* is too narrow. In *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court interpreted *Massiah* as holding that a sixth amendment violation occurs when the government "intentionally creat[es] a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." *See id.* at 274, 100 S.Ct. at 2189. Thus *Henry* establishes that the determinative issue is not the informant's subjective intentions, but rather whether the federal law enforcement officials created a situation which would likely cause the defendant to make incriminating statements.

In a suppression hearing, the district court determined that "the government did not create a situation especially likely to induce Piper to make incriminating statements." We treat that determination as a finding of fact; it involved evaluating the probable consequences of the January meeting, not a balancing of competing policy considerations. *See United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.1984) (en banc). Therefore, we review the determination under the clearly erroneous standard. *See id.* at 1200 & n. 5.

■ Some factors support a conclusion contrary to the one reached by the district court. Piper's contribution to the federal conspiracy was to locate a plane which other conspirators could fly to a source of marijuana in Mexico. One of the criminal activities California was investigating involved Piper's supplying of a plane to a second drug-smuggling conspiracy. It would be reasonable to infer from those similarities that the January meeting was

likely to induce incriminating statements. On the other hand, the record also contains support for the conclusion that the meeting was not likely to induce incriminating statements. The most telling points are that the January meeting concerned criminal transactions which were completely distinct from the federal charges and that the informant had no knowledge of the federal indictment. On balance, we cannot say that the district court's conclusion was clearly erroneous. Therefore, we affirm the district court's conclusion that no sixth amendment violation occurred.[2]

## II. Jury Instructions

Two coconspirators who had entered guilty pleas prior to trial testified against Piper and Harris. The district court instructed the jury as follows:

> The case has been disposed of as to [the coconspirators]. They are no longer a concern to you and you should not speculate as to the reason or disposition. [Their] disposition should not control or influence your verdict with reference to the remaining defendants, and you must base your verdicts as to each of them solely on the evidence against each.

We have held that if evidence of a coconspirator's guilty plea is admitted, then the jury must be instructed that the plea cannot be considered as evidence of the defendant's guilt. *United States v. Halbert*, 640 F.2d 1000, 1006–07 (9th Cir.1981). Presumably, the district court gave its instruction out of concern that the jury might use the coconspirators' guilty pleas as evidence of Piper's and Harris' guilt.

However, Piper and Harris objected to the language in the instruction indicating that the jurors should not speculate as to

---

**1.** A threshold issue lurking in this case is whether the actions of the state informer can properly be attributed to the federal government. Piper argues that the federal government's knowledge of the January meeting and its implicit acquiescence justify attribution. As the federal government does not dispute the point, we assume without deciding that the actions of the state informant must be treated as federal actions.

**2.** Reaching the opposite conclusion, namely that Piper's sixth amendment right to counsel was violated, would not mean that the state erred in continuing its investigation. Rather it would mean only that the fruits of the investigation should not have been used in Piper's federal trial. *See Massiah*, 377 U.S. at 206–07, 84 S.Ct. at 1203.

the reason for the coconspirators' pleas of guilty. One of their theories at trial was that the testimony of the coconspirators was unreliable because the coconspirators were allowed to plead to lesser charges in exchange for favorable testimony. They argue on appeal that the objectionable instruction thus prevented the jury from considering an important part of their case. *See United States v. Marabelles*, 724 F.2d 1374, 1383 (9th Cir.1984).

■ We agree with Piper and Harris that the instruction was unfortunate. "[A] criminal defendant is entitled to an instruction regarding his theory of the case...." *Id.* The district court's instruction improperly tended to undercut the defendants' challenge to the credibility of the coconspirators.

■ Nevertheless, we find no basis for reversal. The adequacy of jury instructions is determined by examining them in their entirety. *Id.* at 1382. Moreover, we review the instructions under the abuse of discretion standard. *United States v. Rohrer*, 708 F.2d 429, 431 (9th Cir.1983). In a separate instruction, the district court told the jury:

> The testimony of ... a confessed codefendant who provides evidence against a defendant for ... immunity from punishment ... must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or by prejudice against the defendant.

The second instruction specifically covered the defendants' theory that the coconspirators gave unreliable testimony. We are confident that it removed any confusion which the first instruction, considered in isolation, might have engendered. Therefore, although in the circumstances of this case we disapprove of some of the language in the first instruction, we hold that the instructions, taken as an entirety, adequately informed the jury. There was no reversible error.

III. Other Issues

A. Piper's Appeal

Prior to their meeting on January 6, 1982, California's informant Mansuetti and Piper had two telephone conversations which California recorded. Piper learned of the existence of the tape recordings at a suppression hearing and requested their discovery under Fed.R.Crim.P. 16(a)(1)(A). The government responded that it would not turn over the tapes because they were in the state's, not the federal government's, possession. Now Piper argues that the government's refusal to provide the tapes was error.

■ After Piper made his initial unsuccessful request for the tapes, Piper let the matter drop; he never raised an objection to the government's action before the district court. In this situation, we review Piper's contention under the plain error standard. *See* Fed.R.Crim.P. 52(b). Plain error is highly prejudicial error affecting substantial rights and is found only in exceptional circumstances. *United States v. Kennedy*, 726 F.2d 546, 548 (9th Cir.1984). The government's position—that it had no obligation to disclose the tapes since they were in California's possession—is not plainly erroneous; to the contrary, it may even be correct, *see Beavers v. United States*, 351 F.2d 507, 509 (9th Cir.1965). Furthermore, the nondisclosed tapes bear only incidentally on the merits of the case. As is perhaps evidenced by Piper's failure to pursue the discovery issue with the district court, it is unlikely that disclosure would have been a significant boon to him. Therefore, Piper falls far short of meeting the plain error standard.

■ The district court admitted evidence that Piper supplied the informer Mansuetti with an airplane to assist an earlier, but unrelated, drug-smuggling conspiracy. Contrary to Piper's contentions, that was not error. The earlier transaction with Mansuetti was strikingly similar to the federal crimes charged against Piper. Consequently, the district court could have reasonably determined that the probative val-

ue of the evidence outweighed its prejudicial effects. The record demonstrates that the district court did perform the balancing required by *United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). It shows, for instance, that in the same ruling in which the district court admitted the contested evidence, the court prohibited the introduction of other bad acts which the court regarded as unduly prejudicial.

Piper also objects that a false financial statement prepared by Harris was admitted into evidence against him. Preparation of the statement, however, was one of the overt acts of the conspiracy. Obviously, therefore, it could be used against Piper.

The district court did not err in admitting portions of the tape-recorded, January 6 conversation between Piper and Mansuetti into evidence. In his testimony, Piper told the jury that his remarks to Mansuetti were made in jest. By showing the manner in which Piper said what he did, the tape recording served as permissible impeachment of Piper's testimony. Nor does the failure of the district court to give an instruction limiting the use of the tape recording to its impeachment value constitute reversible error. Piper did not request a limiting instruction. Moreover, the recording could have been admitted without limitation as a party admission. *See* Fed.R.Evid. 801(d)(2)(A).

B. Harris's Appeal

The informant Mansuetti testified to incriminating statements made by Piper in the January 6 meeting; Mansuetti also testified that Piper had earlier assisted Mansuetti in a similar drug-smuggling conspiracy. Harris argues that because of the prejudicial spillover effects from Mansuetti's testimony, the district court should have granted his repeated motions for severance.

We review denials of severance under the abuse of discretion standard.

*United States v. DeRosa*, 670 F.2d 889, 897 n. 9 (9th Cir.), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982). Here there are many factors supporting the district court's denial of the motion: Mansuetti's testimony did not directly inculpate Harris; the district court clearly and repeatedly instructed the jury to limit its use of Mansuetti's testimony to Piper; the case was not complex, as it involved only two defendants and only one underlying transaction; there was substantial independent evidence of Harris's guilt. *See generally DeRosa*, 670 F.2d at 897–98. Therefore, we conclude that the district court did not abuse its discretion in denying severance.

The district court properly allowed the government to impeach Harris by introducing evidence of his prior conviction for passing counterfeit money in violation of 18 U.S.C. § 491. We held in *United States v. Glenn*, 667 F.2d 1269, 1272 (9th Cir. 1982), that crimes involving dishonesty and fraud are automatically admissible for impeachment purposes under Fed.R.Evid. 609(a)(2). Passing counterfeit money involves dishonesty and fraud. It is simply irrelevant that Harris's conviction on the counterfeit money charge was based on his plea of guilty rather than on an adverse verdict after trial.

There was no impermissible questioning regarding Harris's prior conviction. The district court stopped the prosecutor before he was able to make any substantive use of Harris's prior conviction.

The judgment of the district court is affirmed.