Timothy J. JUDD, Plaintiff, Appellant,

v.

George A. VOSE, Jr.,
Defendant, Appellee.

No. 86–1852.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1987.

Decided March 11, 1987.

Arlene Beth Marcus, Newton, Mass., for appellant.

Frances L. Robinson, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for appellee.

Before COFFIN and SELYA, Circuit Judges, and GIGNOUX,* Senior District Judge.

GIGNOUX, Senior District Judge.

Plaintiff-appellant Timothy J. Judd was indicted by a Middlesex County, Massachusetts, grand jury for malicious and willful burning of a dwelling house, threatening to murder, and intimidating a witness. Prior to trial, Judd filed a motion to suppress incriminating statements made by him to police officers and a motion to suppress a pretrial photographic identification and a subsequent trial identification. After an evidentiary hearing, the trial judge denied both motions. A jury subsequently found Judd guilty of malicious and willful burning of a dwelling house, but not guilty of the other charges. The Massachusetts Appeals Court affirmed Judd's conviction, *Commonwealth v. Judd,* 19 Mass.App.Ct. 1108, 475 N.E.2d 438 (1985), and the Massachusetts Supreme Judicial Court denied further appellate review, *Commonwealth v. Judd,* 394 Mass. 1102, 477 N.E.2d 595 (1985). Judd then filed a petition seeking habeas corpus relief in the United States District Court for the District of Massachusetts. The district court denied the petition, and Judd appeals from the order dismissing the action. On this appeal, Judd contends (1) that his sixth amendment right to counsel and his fifth amendment privilege against self-incrimination were violated by the admission into evidence of statements he made to the police informing them of the whereabouts of his automobile, and (2) that his fourteenth amendment due process rights were violated by an improperly suggestive pretrial photographic identification procedure and the subsequent in-court identification of him by one Dana Conefrey. The district court, Mazzone, J., in a comprehensive opinion, rejected both contentions. We affirm.

## I.

Following a two-day evidentiary hearing on Judd's motions to suppress, the Massachusetts trial judge made detailed written findings of fact, which may be summarized as follows:[1]

*Judd's Statements as to the Location of his Automobile.* On November 6, 1982, a fire occurred in Chelmsford, Massachusetts, at the dwelling where Judd's wife was staying. Domestic strife between Judd and his wife gave police probable cause to believe that Judd had something to do with the fire. The police procured a warrant for Judd's arrest and communicated word of that warrant to, among other places, New York.

On November 9, 1982, the Chelmsford police were informed that Judd had been arrested in New York. The next day, Officer Auger and Inspector Walsh of the Chelmsford Police Department drove to New York and met with law enforcement officials there. Judd, represented by a New York attorney, waived formal extradition to Massachusetts. The attorney told Officer Auger that he did not wish Judd to make any statements until he had been formally arraigned in Massachusetts. Judd, who was present, heard the attorney's statement, but said nothing himself. The officers made no promise not to receive a statement from Judd. The police read Judd his *Miranda* rights, and Judd signed a card indicating that he understood those rights. Judd understood it was in his best interest not to say anything and understood the *Miranda* warning.

Shortly after departing for Massachusetts, Judd voluntarily initiated general conversation about his domestic problems. As Judd continued his conversation, he discussed his automobile and its speed. At that point Officer Auger asked Judd where his automobile then was located. Judd told Officer Auger that the automobile was at his sister's home in Greenville, New York. The offi-

---

* Of the District of Maine, sitting by designation.

1. The factual determinations made by the Massachusetts trial judge are "fairly supported by the record," and Judd has failed to prove "by convincing evidence" that they were erroneous.

They are therefore entitled to the "presumption of correctness" which is mandated by 28 U.S.C. § 2254(d) (1982). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

cers and Judd then drove to Greenville where they found the car, and the officers photographed it. The drive to Greenville was a diversion of 40 to 50 miles that took approximately one hour; during that time, Judd did not change his mind about directing the police to the automobile.[2]

*The Photographic Identification of Judd by Dana Conefrey.* Dana Conefrey, an attendant at a gasoline station in Chelmsford, gave the police a description of a 30–35 year-old man, 5' 7", 160 pounds, brown hair with a two- to three-day beard, who had been in the gasoline station at about 6:30 p.m. on the night of the fire. Conefrey told the police that the man had been driving a green automobile with out-of-state license plates, and that the man had ordered some gasoline pumped into a small can.

On November 12, 1982, after Judd had been photographed, Officer Auger asked Conefrey to look through a "mug book" to see if he recognized anyone. The mug book contained 168 photographs, principally of white males. Conefrey initially selected about twelve photographs that he thought resembled the man in question. He then narrowed his choice to six. At that point, Conefrey asked the heights and weights of those six; learning that information, Conefrey eliminated three more photographs. After inquiring as to the ages of the persons in the three remaining pictures, Conefrey eliminated one more. From the remaining two, Conefrey positively identified Judd. The officers did nothing to suggest that Conefrey select the photograph of Judd.[3]

## II.

Judd first contends that Officer Auger's question on the trip from New York to Massachusetts about the location of his automobile violated his sixth amendment right to counsel. Implicit in Judd's argument is the assertion that his right to counsel had attached at some point prior to that trip, either when he was arrested or at the New York extradition hearing. We agree with the district court that Judd's right to counsel had not attached before the return trip to Massachusetts.

The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The district court correctly focused on a long line of Supreme Court cases establishing that the "core purpose" of the guarantee of counsel is to provide assistance to criminal defendants at trial and at "critical" pretrial proceedings, and holding that the right to counsel attaches only when adversary judicial criminal proceedings are initiated against an individual "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). *See, e.g., Michigan v. Jackson,* —— U.S. ——, 106 S.Ct. 1404, 1407–08, 89 L.Ed.2d 631 (1986); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1145, 89 L.Ed.2d 410 (1986); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 483–84, 88 L.Ed.2d 481 (1985); *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *United States v. Ash,* 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973); *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967).

**2.** The trial judge found that Judd understood his *Miranda* rights but that he had already voluntarily, intelligently, and knowingly waived his rights to counsel and to silence by the time he answered the question as to the automobile's location. The trial judge also found that Judd adhered to the waiver throughout the return trip to Massachusetts.

**3.** The trial judge specifically found that the 168 pictures in the mug book were a "broad cross-section"; that the twelve pictures originally considered by Conefrey were a "representative group of people roughly of the age and appearance that Conefrey recalled"; and that the final two photographs looked "quite similar." The trial judge also "observed" that Judd has a broad face, prominent cheekbones, thick brown eyebrows, dark penetrating eyes. He found it "easy to recognize" Judd from the photograph selected by Conefrey even though the photograph showed the defendant with a beard.

In the present case, at the time Judd informed the officers of the location of his automobile, he had been arrested on a fugitive warrant and had waived extradition proceedings, but had not been formally charged. It is firmly established that the sixth amendment right to counsel does not attach at the time of a defendant's arrest. *United States v. Gouveia,* 467 U.S. at 190, 104 S.Ct. at 2298–99. Nor had the right to counsel attached at Judd's extradition hearing. As we have previously observed, an extradition hearing has a "modest function" not involving the question of guilt or innocence, and is not a "criminal proceeding" within the meaning of the sixth amendment. *Sabatier v. Dabrowski,* 586 F.2d 866, 869 (1st Cir.1978). *See also McDonald v. Burrows,* 731 F.2d 294, 297 (5th Cir.1984), *cert. denied,* 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108 (1985); *Caltagirone v. Grant,* 629 F.2d 739 (2d Cir.1980); *Dunkin v. Lamb,* 500 F.Supp. 184 (D.Nev. 1980).

Finally, the district court properly rejected Judd's argument that even if his right to counsel had not yet attached, he did in fact have an attorney at the waiver of extradition hearing and the police questioning interfered with the attorney-client relationship. The Supreme Court's recent decision in *Moran v. Burbine* provides clear support for the district court's conclusion:

> [T]he suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any "criminal prosecutio[n]," ... the accused shall not be left to his own devices in facing the " 'prosecutorial forces of organized society.' "

106 S.Ct. at 1146 (citations omitted).

We conclude that the record and the law amply support the district court's holding that Judd's sixth amendment right to counsel was not violated by Officer Auger's question.

### III.

Judd next argues that the police questioning was a custodial interrogation and that he did not waive his fifth amendment rights to silence and to have an attorney present during questioning. The district court found that Judd was interrogated in custody, but held that even if Judd had asserted his fifth amendment rights, he had knowingly and voluntarily waived those rights before he answered police questions by initiating a conversation with the police indicating his willingness for a generalized discussion about the investigation. We agree with the district court that Judd made a valid waiver of those rights.

The district court correctly applied a two-step analysis to determine whether Judd's waiver was valid:

(1) whether Judd initiated a conversation and thereby indicated a willingness to engage in "a generalized discussion about the investigation." *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2834–35, 77 L.Ed.2d 405 (1983); and

(2) " 'whether a valid waiver of the right to counsel and the right to silence ... occurred, that is, whether the purported waiver was knowing and intelligent ... under the totality of the circumstances, including the necessary fact that [Judd], not the police, reopened the dialogue with the authorities.' " *Oregon v. Bradshaw,* 462 U.S. at 1046, 103 S.Ct. at 2835 (quoting *Edwards v. Arizona,* 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 1885, n. 9, 68 L.Ed.2d 378 (1981)).

Relying on the state trial judge's findings of fact, which were accepted as correct, *see ante* n. 1, the district court determined that Judd initiated a general conversation that led to a discussion about his automobile, at which point Officer Auger asked Judd where his automobile then was. Having found that Judd initiated the conversation, the *Edwards v. Arizona* prong of the test was satisfied. The district court relied on the same findings of

fact to conclude that by initiating the conversation Judd indicated his willingness to engage in a "generalized discussion about the investigation," *Oregon v. Bradshaw*, 462 U.S. at 1045–46, 103 S.Ct. at 2834–35; that he understood his *Miranda* rights as the officers read them to him; that he signed a card to so indicate; that he had already voluntarily, intelligently, and knowingly waived those rights by the time he answered the question as to the automobile's location; and that he did not assert his rights to silence or to counsel during the remainder of the trip. These conclusions satisfied the *Oregon v. Bradshaw* prong. Having found that both steps of the test for a valid waiver were satisfied, the district court concluded that the questioning did not violate Judd's fifth amendment rights.

We find no error in the district court's analysis. Judd's fifth amendment privilege against self-incrimination was not violated by Officer Auger's question as to the location of the automobile.

### IV.

Judd's final contention is that his fourteenth amendment right to due process of law was violated because the pretrial and subsequent in-court identification of him by Conefrey were the products of impermissibly suggestive photographic identification procedures. He seeks suppression not only of Conefrey's in-court identification, but of his testimony concerning the out-of-court identification. The district court found both types of testimony admissible. We agree.

■ A conviction based on an in-court eyewitness identification following a pretrial photographic identification must be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Even if the pretrial photographic identification procedure was impermissibly suggestive, however, identification testimony will not be excluded if the identification

otherwise possesses sufficient aspects of reliability. *Manson v. Braithwaite*, 432 U.S. 98, 113–14, 97 S.Ct. 2243, 2252–53, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). The factors to be considered in determining the reliability of identification testimony include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253; *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–83. To be weighed against these factors is "the corrupting effect of the identification itself." *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253.

■ Applying these standards, the district court first concluded that the photographic identification procedure used here was not suggestive. It relied on the factual findings of the state trial judge, who, unlike the district court and this court, was able to view the photographs. The state trial judge explicitly found that the 168 pictures in the mug book were a "broad cross-section"; that the twelve pictures originally considered by Conefrey were a "representative group of people roughly of the age and appearance that Conefrey recalled"; that the final two photographs looked "quite similar"; and that it was "easy to recognize" Judd from the photograph selected by Conefrey. The district court properly accepted these findings in determining that the photographic display itself was not suggestive. *See ante* n. 1.

■ Judd's other challenges to the photographic identification are equally unpersuasive. He says that the height, weight and age information furnished to Conefrey by the officers rendered the procedure impermissibly suggestive, but nothing in the record suggests that this information led Conefrey to an identification he would not otherwise have made. Nor is there any indication that the officers in any way pressured Conefrey to make an identification.

The description that Conefrey had previously given the officers matched the photograph he ultimately selected, and his identification was unhesitant.

Finally, applying the five factors for determining reliability enumerated by the Supreme Court in *Manson,* the district court held that even if the officers had used an impermissibly suggestive photographic identification procedure, Conefrey's identification was reliable. Judd was at Conefrey's gasoline station for three to five minutes; the lighting was good; Judd's request that gasoline be poured into a small container, the damaged condition of his car, and his bizarre conduct while at the station[4] caused Conefrey to pay particular attention to Judd; Conefrey's initial description of Judd shortly after the incident was detailed, accurate and unequivocal; and Conefrey's photographic identification was made only six days after Judd was at the service station. The criteria set forth in *Manson* were satisfactorily met under the circumstances of this case.

We conclude that Judd's fourteenth amendment right to due process was not violated by Conefrey's identification testimony.

### V.

The order of the district court dismissing Judd's habeas corpus petition is

*Affirmed.*

4. At the state court trial, Conefrey testified that Judd's car had a damaged trunk closed with a strap, that Judd appeared to be drunk, and that he nearly collided with another car when leaving the service station.