182 F.3d 668 (9th Cir. 1999)
 IN RE: GRAND JURY INVESTIGATION, IN THE MATTER OF MULTIPLE REPRESENTATION BY CHRISTOPHER KIERNAN, ESQ.
MATTHEW MOLUS; JASON MOLUS; MARK MOLUS; MICHAEL RICHARD MOLUS, III; DWAYNE ELLISON; STEVE GIORDANO; H.D. WEEKS; JOHN DRAKE; GORDON SIMPSON, APPELLANTS,
v.
UNITED STATES OF AMERICA, APPELLEE.
 No. 99-15125
 U.S. Court of Appeals, Ninth Circuit
 Argued and Submitted May 10, 1999
Decided June 17, 1999
 
 Christopher D. Kiernan, La Quinta, California, for the appellants.
 Frank P. Cihlar, United States Department of Justice, Washington, D.C., for the appellee.
 Appeal from the United States District Court for the District of Nevada Howard D. McKibben, District Judge, Presiding D.C. No. CV-98-00540-HDM/ PHA
 Before: Harlington Wood, Jr.,* Alex Kozinski and Pamela Ann Rymer, Circuit Judges.
 
 Kozinski, Circuit Judge
 OPINION
 Opinion by Judge Kozinski
 
 1
 We must decide how, if at all, review can be had of a district Judge's order disqualifyingan attorney from representing multiple witnesses in a grand jury investigation.
 
 I.
 
 2
 A federal grand jury in the District of Nevada is busy investigating the financial transactions of a certain company. Attorney Christopher Kiernan represented several witnesses who were called before the grand jury. The government, seeing the potential for a conflict of interest among his clients, moved to disqualify Kiernan from his multiple representation. The district court held a hearing pursuant to Wheat v. United States, 486 U.S. 153 (1988). Upon determining that the witnesses had waived their right to conflict-free counsel and that the government had not made a showing sufficient to overcome these waivers, the district court denied the motion without prejudice.
 
 
 3
 Shortly thereafter, the government designated certain of Kiernan's clients as targets of the investigation, and moved once more to disqualify Kiernan from his multiple representation. The district court held a second Wheat hearing in January of 1999, and this time granted the motion to disqualify Kiernan. Kiernan filed a notice of appeal from that order on behalf of his clients, and the appeal was expedited.
 
 II.
 
 4
 Before we can reach the merits, we must consider whether we have jurisdiction. Appellants assert that we do, pursuant to the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). In support of their position, they cite cases from the 1970s that allow such appeals. See In re Investigation Before the February, 1977, Lynchburg Grand Jury, 563 F.2d 652, 655 (4th Cir. 1977); In re the Grand Jury Empaneled January 21, 1975, 536 F.2d 1009, 1011 (3d Cir. 1976); In re Gopman, 531 F.2d 262, 265 (5th Cir. 1976); In re Investigation Before the April 1975 Grand Jury, 531 F.2d 600, 605 n.8 (D.C. Cir. 1976). However, all of these cases come from an era when disqualification orders were widely presumed to be immediately appealable. See generally Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 804-05 (2d Cir. 1974) (en banc) (collecting cases). Since then, the Supreme Court has refused to allow interlocutory appeals in every disqualification case that has come before it. See Richardson-Merrell Inc. v. Koller, 472 U.S. 424, 430 (1985) (holding that "[a]n order disqualifying counsel in a civil case is not a final judgment"); Flanagan v. United States, 465 U.S. 259, 270 (1984) (holding that a disqualification order in a criminal case is not appealable); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375 (1981) (holding that the denial of a motion to disqualify counsel in a civil case is not appealable). The later cases obviously cast doubt on the earlier ones cited by appellants. We can see no reason why, if disqualification orders are generally unappealable in either civil or criminal proceedings, they should be appealable in the grand jury context. In fact, we have suggested that they aren't. See United States v. Chesnoff (In re the Grand Jury Subpoena Issued to David Z. Chesnoff), 62 F.3d 1144, 1144 (9th Cir. 1995). Today, we so hold. In so doing, we agree with the only other circuit to have reached the issue. See In re Schmidt, 775 F.2d 822, 823 (7th Cir. 1985).
 
 
 5
 Appellants request, in the alternative, that we treat their appeal as a petition for a writ of mandamus. Mandamus is a "drastic" remedy that generally issues only when the district court has made a clear error of law. See Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir. 1977). We see no such error here.[1] Although the witnesses claim to have a due process right to the aid of counsel when testifying before the grand jury, that asserted right is not coextensive with the qualified right to counsel of choice possessed by defendants in a criminal case and guaranteed by the Sixth Amendment. The Sixth Amendment is, after all, inapplicable to a grand jury witness, because he has not yet become an "accused." See United States v. Mandujano, 425 U.S. 564, 581 (1976) (plurality opinion).[2]
 
 
 6
 Given that the rights of grand jury witnesses are less broad than those of criminal defendants, and ill-defined to boot,[3] it's hard to see how the disqualification order could violate their right to due process. Whatever due process right a grand jury witness may have to the advice of counsel, it is not so broad as to encompass the right to counsel of first choice. Here, the court didn't preclude the witnesses from having a lawyer at all; it merely prohibited them from consulting a specific attorney. Because the due process clause doesn't contain any right to counsel of choice for grand jury witnesses, no substantive rights were violated.[4]
 
 
 7
 Nor can appellants point to any procedural irregularities that were serious enough to amount to a denial of due process. The court here entered its order after holding an evidentiary hearing. Further, it didn't enter the order arbitrarily or for invidious reasons; rather, it did so out of a legitimate concern about the effect of the potential conflicts of interest on the administration of Justice and the public perception thereof. Thus, no procedural due process rights of the appellants were violated.
 
 
 8
 Because the district court's order was not a manifest abuse of discretion, see Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383 (1953), the petition for mandamus is denied.
 
 
 9
 APPEAL DISMISSED; PETITION FOR MANDAMUS DENIED.
 
 
 
 NOTES:
 
 
 *
 The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.
 
 
 [1]
 The government suggests that we deny the petition for mandamus because appellants have an adequate remedy by way of appeal after they have been held in contempt for refusing to testify before the grand jury. Although that is the proper way to seek review when a witness refuses to testify or to produce documents on grounds of privilege, see United States v. Ryan, 402 U.S. 530, 532 (1971), we aren't convinced it would work in this context because denial of counsel of choice may not be a valid justification for refusing to testify before the grand jury.
 
 
 [2]
 Although some of Kiernan's putative clients are targets and others merely witnesses, that is of no moment in the Sixth Amendment calculus. The Supreme Court has held that "the right to counsel does not attach until the initiation of adversary judicial proceedings. " United States v. Gouveia, 467 U.S. 180, 188 (1984). We agree with our sister circuits that have held that merely being designated a target does not constitute the initiation of such proceedings. See, e.g., United States v. Myers, 123 F.3d 350, 359 (6th Cir. 1997); United States v. Holmes, 44 F.3d 1150, 1160 (2d Cir. 1995).
 
 
 [3]
 Indeed, no decision of the Supreme Court has even held that a grand jury witness is entitled to have his attorney outside the jury room. See Conn v. Gabbert, 119 S. Ct. 1292, 1296 (1999).
 
 
 [4]
 The fact that appellants have no substantive right to counsel of choice necessarily implies that any legitimate government interest outweighs their interest in retaining Kiernan. The district court had before it evidence that some of Kiernan's clients were owners of the company and others employees. The conflict inherent in this situation is a legitimate reason to bar multiple representation. Cf. Wheat, 486 U.S. at 160 (noting the "independent interest" of the federal courts "in ensuring that criminal trials are conducted within the ethical standards of the profession"). Because that evidence standing alone is enough to justify the district court's order, we need not consider whether the district Judge improperly relied on evidence that was presented to him in camera in reaching his decision.