UNITED STATES of America,
Plaintiff–Appellee,

v.

Darnell HAYES, Defendant–Appellant.

No. 98–50609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1999

Filed Sept. 8, 1999

940

Michael L. Crowley, San Diego, California, for the defendant-appellant.

Yesmin E. Saide, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BRUNETTI, RYMER, and SILVERMAN, Circuit Judges.

RYMER, Circuit Judge:

On this appeal we are asked to slide the protections of the Sixth Amendment's right to counsel back to a time that predates the initiation of formal criminal proceedings by nearly a year.

Darnell Hayes was one of several targets of an investigation into a complicated, multi-party scheme to sell grades for classes that foreign students did not attend, perform course work for, or take exams in. The government asked for (and got) court approval to take material witness depositions of several foreign students before they left for home. Mean-while, the government wired a co-conspirator who agreed to cooperate and to allow the government to tape a conversation with Hayes. Hayes was subsequently indicted, and sought to exclude the tape on *Massiah* grounds. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The district court found no Massiah violation since the depositions and the taped conversation occurred before formal criminal proceedings were initiated against Hayes. Nor do we.

As the remaining issues raised on appeal do not require reversal, we affirm.

I

Beginning in 1989, Sam Koutchesfahani solicited and accepted money from Middle Eastern foreign students to gain their admission to San Diego City College (SDCC) even though they did not meet SDCC's admissions criteria. He gave counterfeit documents to Richard Maldonado, an admissions officer, and paid him to issue fraudulent INS Form I–20s that falsely certified that the foreign students had met SDCC's admissions requirements. Then Koutchesfahani paid instructors at SDCC, Mesa College, and Palomar College to give passing grades to students who never attended classes or took any exams.

One of these instructors was Hayes, an adjunct professor at Mesa who taught classes in marketing and business. He was also approved by Ohio University, the University of Oklahoma, and Eastern Kentucky University to administer correspondence courses. Beginning in 1992, Hayes sold approximately sixty-five passing grades in his Mesa classes to approximately thirty-one foreign students who never attended class or completed class work and examinations. Although he never dealt with the students himself, Hayes was paid $150 per grade by Koutchesfahani for the Mesa classes, and $50 per course for thirty-four foreign students in eighty-seven correspondence courses for which he fraudulently certified the examinations as properly administered. For his part,

Koutchesfahani received $109,000 from these students. As a result of Hayes's participation in the conspiracy, these foreign students were able to maintain their non-immigrant F–1 student status and to obtain college credits and degrees.

Hayes received between $11,513 and $14,150 in bribes from Koutchesfahani, but failed to report any of this income to the IRS or to State Unemployment officials. He also claimed "head of household" status with two exemptions at a time when he knew he qualified only for "single" status with one exemption, and failed to file any tax return at all for 1992.

At some point a criminal investigation was begun into the grade selling scheme, which stopped when Koutchesfahani and the foreign students found out about the investigation in the fall of 1994. However, Hayes and Koutchesfahani continued to talk. On November 30, 1995, Hayes consented to an interview by federal agents at his home, but told them a number of things that were untrue (for example, that Middle–Eastern students attended class and he did not give passing grades to students who did not go to class; that no Middle–Eastern students were enrolled in Mesa classes in 1994; that money he received from Koutchesfahani was for marketing work on "pharmaceuticals" for Koutchesfahani's company; and that he personally supervised the students' correspondence exams at Mesa).

Later, when Hayes learned in March 1996 that Koutchesfahani was thinking about cooperating with the government, Hayes asked him not to cooperate against *him*. Nevertheless, Koutchesfahani did enter into a cooperation agreement and on May 5, 1996, allowed agents to monitor and record a conversation he had with Hayes at a coffee house. During the conversation, Hayes said that he planned to lie at trial.

In the meantime, on April 19, 1996, the government filed a motion to take pre-indictment videotaped depositions of four foreign student witnesses who were graduating and permanently returning to the United Arab Emirates. The government named Hayes and five other targets. Each target was served, but Hayes's counsel neither objected to the motion nor attended the hearing on the motion. A magistrate judge granted the motion. A few days before May 6, 1996, when the depositions were to begin, Hayes's privately-retained counsel substituted out and appointed counsel stepped in. The depositions took place thereafter.

On April 17, 1997, a federal grand jury indicted Hayes for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and to commit mail fraud in violation of 18 U.S.C. §§ 1341, 1346 (Count 1); aiding and abetting mail fraud-i.e., fraudulent mailings of grade reports, transcripts, and correspondence examination certifications-in violation of 18 U.S.C. §§ 2, 1341, 1346 (Counts 2–54); filing false tax returns in violation of 26 U.S.C. § 7206(1) (Counts 55–56); and failing to file a tax return in violation of 26 U.S.C. § 7203 (Count 57). After a jury trial, Hayes was convicted on all counts.

The probation office recommended a base offense level of 10 on Counts One through Fifty-four pursuant to U.S.S.G. § 2C1.7(a) (1997); a 6–level increase for loss to the government pursuant to U.S.S.G. §§ 2C1.7(b)(1)(A), 2F1.1(b)(1)(G); and a 2–level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1, for a total offense level of 18. On Counts Fifty-five through Fifty-seven, the probation office recommended a base offense level of 7 pursuant to U.S.S.G. §§ 2T1.1(a), 2T4.1. After adjusting for multiple counts, U.S.S.G. § 3D1.4, the probation office arrived at a total offense level of 18, a criminal history category of I, and a guidelines range of 27 to 33 months. The court adopted the presentence report and recommendation, sentencing Hayes to 30 months imprisonment, and 3 years supervised release. Hayes timely appeals both his conviction and sentence.

## II

### A

■ Hayes argues that the tape recording of his conversation with Koutchesfahani was obtained in violation of *Massiah* because he had been served with a target letter on November 30, 1995, the government knew at least as of February 7, 1996 (when he was subpoenaed to appear before the grand jury) that Hayes was represented by counsel, and in May 1996 the government conducted depositions of material witnesses based on a court order. In essence, his contention is that the government created a situation leading to an invasion of the right to counsel, even though Hayes had not yet been indicted. While this may be some *other* kind of problem,[1] no other theory has been advanced in this case and we disagree that the Sixth Amendment rights upon which Hayes seeks reversal attached before criminal proceedings were formally instituted against him.

The Sixth Amendment provides that "[i]n all criminal *prosecutions,* the *accused* shall enjoy the right ... to have the Assistance of Counsel for his defence." (Emphasis added.) Literally, these prerequisites are not met here, as there was neither a "prosecution" nor was Hayes an "accused" at the time Koutchesfahani was wound up and wired to talk to him.

Right to counsel cases in general, and the *Massiah* line of cases in particular, involve incidents that occurred *after* the initiation of adversary criminal proceedings and that arose during a critical, *post*-indictment proceeding. As the Court explained in *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), "our cases have long recognized that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant."

Then–Justice Rehnquist embraced for the majority the plurality's description of the right to counsel in *Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972):

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama* [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)] it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. [W]hile members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*Gouveia,* 467 U.S. at 187–188, 104 S.Ct. 2292 (quoting *Kirby,* 406 U.S. at 688–689, 92 S.Ct. 1877) (citations omitted). He then stated:

That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal prosecutio[n]" and an "accused," but also with the purposes which we have recognized that the right to counsel serves. We have recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor."

*Id.* at 188–189, 104 S.Ct. 2292. The opinion notes:

Although we have extended an accused's right to counsel to certain "critical" pre-

---

1. We express no opinion on the issue, but note that in declining to stretch the Sixth Amendment to pre-indictment identification procedures in *Kirby v. Illinois,* 406 U.S. 682, 691, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court suggested that when a person has not been formally charged with a criminal offense, prejudicial procedures may nevertheless in some circumstances run afoul of the Due Process Clause of the Fifth and Fourteenth Amendments.

trial proceedings, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), we have done so recognizing that at those proceedings, "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both," *United States v. Ash, supra,* at 310, 93 S.Ct. 2568, 37 L.Ed.2d 619, in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade, supra,* at 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149. *Id.* at 189, 104 S.Ct. 2292. And adds:

> Thus, given the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings "is far from a mere formalism." It is only at that time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Id.* (quoting *Kirby,* 406 U.S. at 689, 92 S.Ct. 1877) (citation omitted). "It is *this* point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby,* 406 U.S. at 690, 92 S.Ct. 1877 (emphasis added).

*Massiah* itself, of course, involved post-indictment contact. The defendant was indicted for violating the federal narcotics laws, retained a lawyer, pleaded not guilty, and was released on bail. While the defendant was free on bail, a federal agent succeeded by surreptitious means in listening to incriminating statements made by the defendant to his alleged co-conspirator, who was cooperating with the government, and the statements were introduced at trial. The Court held that a defendant is denied the basic protections of the Sixth Amendment "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him *after he had been indicted* and in the absence of his counsel." *Massiah,* 377 U.S. at 206, 84 S.Ct. 1199 (emphasis added). As it stated, "[a]ny secret interrogation of the defendant, *from and after the finding of the indictment,* without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." *Id.* at 205, 84 S.Ct. 1199 (emphasis added) (internal quotations omitted).

The law in this circuit is likewise limited. In *United States v. Kenny,* 645 F.2d 1323 (9th Cir.1981), we explicitly rejected a *Massiah* challenge to a tape recording made by an informant of a conversation with a defendant (who was represented by counsel) before his indictment. As we noted, Kenny had not been charged, arrested or indicted at the time of the recording:

> The short answer to Kenny's contention that his right to counsel was breached is that the right to counsel is not viewed to attach prior to the initiation of adversary judicial proceedings against an accused. Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached.

*Id.* at 1338 (citation omitted). Similarly, we held in *United States v. DeVaughn,* 541 F.2d 808 (9th Cir.1976), that *Massiah* was not implicated by taping a telephone call made to a defendant after a felony complaint against him had been dismissed, but before he was prosecuted again.

The difficulty in this case comes from the fact that witness depositions pursuant to Federal Rule of Criminal Procedure 15 have the trappings of trial about them. By definition they are "for use at trial," and contemplate the "defendant's" presence (along with his counsel), examination,

cross-examination, production of prior statements, and trial-type limitations on the scope and manner of taking testimony.[2] At the same time, Rule 15 depositions may be used at trial only *if* an indictment is returned, the depositions are relevant to the charges, and the witnesses don't show up.

■ Were resemblance to trial the standard, we would have less trouble saying the Sixth Amendment was triggered. But it isn't. Instead, we believe that the Supreme Court meant what it said in *Ash*, that *Kirby* "forecloses application of the Sixth Amendment to events before the initiation of adversary criminal proceedings." *United States v. Ash*, 413 U.S. 300, 303 n. 3, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). Nor would we have trouble saying the Sixth Amendment was triggered if being a *target* were enough. But it isn't, either. As the Court has made clear, the Sixth Amendment "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *Gouveia*, 467 U.S. at 187, 104 S.Ct. 2292; *see also Kenny*, 645 F.2d at 1338. Although the depositions were preceded by adversary judicial proceedings against the witnesses, none had been initiated against Hayes. And because the depositions were only to preserve the testimony of the departing students for trial if there were a trial and a

student did not return, we cannot say that the government "committed" itself to prosecuting Hayes (or any of the other targets) when it sought to take them.

In sum, the Supreme Court, this court, and every other circuit has said that adversary judicial proceedings are initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment,"[3] which a motion for taking witness depositions is not. This is a clean and clear rule that is easy enough to follow: initiating any of these specific proceedings "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby*, 406 U.S. at 690, 92 S.Ct. 1877. We are loath to engraft some new proceeding onto the rule, thereby making it no longer clean and clear.

Instead, we hold that *Massiah* was not implicated and Hayes's Sixth Amendment rights were not infringed because criminal proceedings had not been formally initiated against him.

**B**

■ Alternatively, Hayes maintains that the recording ran afoul of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This cannot

---

**2.** Indeed, the Rule seems to assume that depositions will only be taken after indictment, when there *is* a "defendant." No doubt this is the usual practice, but of course here, the government invoked Rule 15 and sought depositions because the students were about to leave the country. The magistrate judge's order permitting the depositions deemed the government and the targets to be "parties" for purposes of complying with Rule 15. However, Hayes did (and does) not contest the depositions themselves. Therefore, whether this was a proper procedure is not before us.

**3.** *Gouveia*, 467 U.S. at 188, 104 S.Ct. 2292 (internal quotations omitted); *see also McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Michigan v. Jackson*, 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Moore v. Illinois*, 434 U.S. 220, 226, 98 S.Ct. 458, 54

L.Ed.2d 424 (1977); *Kirby*, 406 U.S. at 689, 92 S.Ct. 1877 (plurality opinion); *United States v. Mapp*, 170 F.3d 328, 334 (2d Cir. 1999), *petition for cert. filed* June 14, 1999; *United States v. Tyler*, 164 F.3d 150, 156 (3d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999); *United States v. Ingle*, 157 F.3d 1147, 1151 (8th Cir. 1998); *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1117 (10th Cir.1998); *Kight v. Singletary*, 50 F.3d 1539, 1548 (11th Cir. 1995); *United States v. Williams*, 993 F.2d 451, 456 (5th Cir.1993); *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir.1992); *United States v. Payne*, 954 F.2d 199, 203 (4th Cir. 1992); *Greenawalt v. Ricketts*, 943 F.2d 1020, 1026 (9th Cir.1991); *Judd v. Vose*, 813 F.2d 494, 496 (1st Cir.1987); *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C.Cir.1986); *United States v. Reynolds*, 762 F.2d 489, 493 (6th Cir.1985).

be so, however, as Hayes voluntarily met Koutchesfahani at a coffee house. It was a non-custodial encounter, to which *Miranda* does not apply. *See id.* at 444, 86 S.Ct. 1602.

## III

■ Hayes argues that his strong, almost familial relationship with Koutchesfahani was insufficient to show that he knew of the conspiracy. However, "a defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *United States v. Calabrese,* 825 F.2d 1342, 1348 (9th Cir.1987) (internal quotations omitted).

Viewing the evidence and all inferences reasonably drawn from it in the light most favorable to the government, as we must, it was more than sufficient. Koutchesfahani testified that Hayes received $150 per grade for sixty-five passing grades to thirty-one foreign students whom Hayes had never met or required to attend class, yet for whom he signed and wrote notes on "add cards." When students failed to pay for a passing grade, Hayes gave them an "incomplete." Koutchesfahani also testified that he paid Hayes $50 for each of eighty-seven correspondence courses that Hayes fraudulently certified as properly administered to thirty-four foreign students. This was corroborated by school administrators and the foreign students. In addition, the evidence showed that some of the students were not in the United States, or were at other schools, when Hayes represented they were attending his classes or taking exams. Further, Hayes tried to cover up the nature of his relationship with Koutchesfahani and the grade passing scheme.

■ The same is true of the tax charges. The government must, and did prove, that Hayes was required to file a return but did not, and that the failure was willful. 26 U.S.C. § 7203; *United States v. Vroman,* 975 F.2d 669, 671 (9th Cir. 1992). Hayes did not file a 1992 return or report either his wages from SDCC or

money he received from Koutchesfahani. He had a graduate degree in business and a paralegal degree, and filed returns before and after 1992. Likewise, the evidence was sufficient to support Hayes's conviction for filing false tax returns in violation of 26 U.S.C. § 7206(1), which requires that he made and subscribed a return that was incorrect as to a material matter; the return contained a written declaration that it was made under the penalties of perjury; he did not believe the return to be true and correct as to every material element; and he falsely subscribed to the return with the specific intent to violate the law. *See United States v. Marabelles,* 724 F.2d 1374, 1380 (9th Cir.1984). Hayes reported none of the money he received from Koutchesfahani, which was obviously material to the IRS's ability correctly to calculate Hayes's tax liabilities.

## IV

■ Hayes asserts that he should have been allowed to cross-examine Koutchesfahani about a pending investigation into an application for disability benefits that Koutchesfahani's wife filed with the Social Security Administration. However, the district court was well within its discretion in precluding this line of inquiry, for Koutchesfahani did not sign the application, was not a target of this investigation, and was otherwise substantially impeached. *See United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988).

## V

■ Hayes further contends that he should have been permitted to testify as a "custodian of records" to show that he kept documents which he submitted to the grand jury in the normal course of his business, without cross-examination by the government beyond his role as custodian. The district court ruled otherwise before trial, and Hayes did not take the stand. Because he did not take the stand, we decline to review the issue. *See Luce v.*

*United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Behanna,* 814 F.2d 1318, 1321 (9th Cir. 1987).

## VI

 Hayes maintains that the district court erred in enhancing his sentence for obstruction of justice because its finding did not encompass all of the factual predicates for a finding of perjury, as *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), requires. We disagree. The district court did not base its finding on perjurious trial testimony, but on the ground that Hayes submitted false documents to the grand jury; urged Koutchesfahani to lie to conceal Hayes's role, suggesting among other things that a defense could be that the students paid a "ringer" to sit in his classes and take the exams; and asked Koutchesfahani not to cooperate against him. We review a district court's factual determination under § 3C1.1 of the Sentencing Guidelines for clear error, and a district court's characterization of a defendant's conduct as obstruction de novo. *See United States v. Shetty,* 130 F.3d 1324, 1333 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998). Having done so, we are not firmly convinced that Hayes's conduct did not fall within the guidelines, as he attempted to suborn perjury and produced a false record during the grand jury proceedings. *See* U.S.S.G. § 3C1.1 cmt. 2, 3(b), 3(c).

## VII

 Hayes submits that the district court erred in failing to give him a minor role adjustment under § 3B1.2 of the Sentencing Guidelines because he was a dupe of Koutchesfahani and the unwitting signer of documents at Koutchesfahani's request. In short, he contends that Koutchesfahani ran the show, not him. However, we see no clear error, *see United States v. Ladum,* 141 F.3d 1328, 1348 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 549, 142 L.Ed.2d 457 (1998), for as the district court found, Hayes's role in the conspiracy

was anything but minor. Without him, the scheme could not have worked; Hayes gave thirty-one students passing grades in sixty-five classes which the students never attended and for which they completed no class work or examinations, and Hayes falsely certified eighty-seven correspondence course examinations as properly administered to thirty-four foreign students who never took them. He was paid handsomely for his efforts, which he failed to report to the IRS. And he went to great lengths to cover up the conspiracy.

## VIII

 Hayes argues that the district court should not have refused his requests for downward departure based on aberrant behavior, charitable good works, and physical condition, but the court simply declined to exercise its discretion in favor of a downward departure without indicating that it lacked authority to do so. For this reason we have no authority to review its decision. *See United States v. Govan,* 152 F.3d 1088, 1095 (9th Cir.1998).

AFFIRMED.

SILVERMAN, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the majority's well-written opinion, except its treatment of the *Massiah* issue. On the facts of this case, I would hold that "adversary judicial proceedings" had been initiated by the government's filing of a formal motion to preserve and videotape the testimony of material government witnesses for subsequent use against the defendant at trial, even though the motion was filed before indictment.

### I.

The Supreme Court has held that *Massiah's* protections come into play, and the right to counsel attaches, at the initiation of "adversary judicial proceedings." *United States v. Gouveia,* 467 U.S. 180, 182, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). In

the typical case, of course, adversary judicial proceedings are initiated "by way of formal charge, preliminary hearing, indictment, information or arraignment." *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).[1] However, this was not the typical case. As even the government concedes, *"The filing of the motion to take videotaped depositions was the first court proceeding involving Hayes."* Brief for Appellee United States at 26, n. 28 (Emphasis added.)

The majority says, "Although the depositions were preceded by adversary judicial proceedings against the witnesses, none had been initiated against Hayes." With all due respect, this reveals the heart of the majority's error—its failure to appreciate the significance of material witness depositions. The depositions at issue here were not taken for discovery, nor were they taken as sworn statements for investigative purposes. These depositions were sought and videotaped for the unabashed purpose of preserving *testimony for use against Hayes at trial,* for replay to a jury. It was exactly for that reason that the court appointed a lawyer to represent Hayes at the video depositions even though the indictment had not yet been returned.

As specifically required by Rule 15(d), Fed.R.Crim.P.,[2] the depositions were conducted *like* a trial for use *at* a trial—direct examination by the prosecutor, cross-examination by defense counsel, the requirement that the government turn over to the defense before cross-examination the witness's prior statements, and the defendant's right to be present in person and confront the witnesses. For all intents and purposes, the trial had begun—and prosecution witnesses called to the stand—prior to indictment. It is no wonder that just one week after the indictment was returned, the government made its "Motion to Admit Deposition Testimony of Material Witness at Trial."

What transpired in this case is hardly the usual scenario. In fact, by statute, depositions generally are not even *allowed* until after indictment. See 18 U.S.C. § 3503(a). But under the peculiar circumstances here, it seems undeniable that "adversary judicial proceedings" had been initiated by the government's deposition motion even though formal charges had not yet been filed.

Once it is recognized that adversary judicial proceedings had been initiated by the material witness proceedings, it follows that this case falls squarely within the prohibitions of *Massiah.* Koutchesfahani was not acting on his own. At the time he instigated the coffee house meeting with Hayes, Koutchesfahani was a cooperating witness. He, not Hayes, set up the meeting and he did so, wired for sound, at the government's behest. This is even more aggravated than what occurred in *United States v. Henry,* 447 U.S. 264, 100 S.Ct.

---

**1.** Clearly, *Massiah* is not triggered by a pre-indictment lineup, *Kirby v. Illinois, supra,* the sending of a "target letter," *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality opinion), see also *In re Grand Jury Investigation,* 182 F.3d 668, 670–71 (9th Cir.1999) or a prisoner's placement in administrative segregation while being investigated for crimes, *U.S. v. Gouveia, supra.* As the Supreme Court has repeatedly said, it is the "initiation of adversary judicial proceedings," not pretrial investigation, that triggers the right to counsel and *Massiah*'s concomitant protection. *Id.* at 188, 104 S.Ct. 2292.

**2.** Rule 15(d), Fed.R.Crim.P. states:

Subject to such additional conditions as the court shall provide, a deposition shall be taken and filed in the manner provided in civil actions except as otherwise provided in these rules, provided that (1) in no event shall a deposition be taken of a party defendant without that defendant's consent, and (2) the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself. The government shall make available to the defendant or the defendant's counsel for examination and use at the taking of the deposition any statement of the witness being deposed which is in the possession of the government and to which the defendant would be entitled at trial.

2183, 65 L.Ed.2d 115 (1980). In that case, while Henry was in jail, the government recruited Nichols, another inmate in the same cellblock, to keep his ears open for any incriminating statements from Henry. *Id.* at 266, 100 S.Ct. 2183. In holding Henry's statements to Nichols inadmissible on *Massiah* grounds, Chief Justice Burger wrote:

> [T]he concept of a knowing and voluntary waiver of Sixth Amendment rights does not apply in the context of communications with an undisclosed undercover informant acting for the Government. In that setting, Henry, being unaware that Nichols was a Government agent expressly commissioned to secure evidence, cannot be held to have waived his right to the assistance of counsel.

> \* \* \*

> [W]e conclude that the Court of Appeals did not err in holding that Henry's statements to Nichols should not have been admitted at trial. By intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel. This is not a case where, in Justice Cardozo's words, "the constable ... blundered[;]" rather, it is one where the "constable" planned an impermissible interference with the right to the assistance of counsel.

*Id.* at 272, 275, 100 S.Ct. 2183 (citations omitted).

In the present case, it is undisputed that the government prevailed on Koutchesfahani to initiate a meeting with Hayes and to attend the meeting wearing a concealed listening device. The purpose was clear— to "create[ ] a situation which would likely cause the defendant to make incriminating statements." *United States v. Harris,* 738 F.2d 1068, 1071 (9th Cir.1984). Since this clandestine interrogation occurred after the government brought its motion for pre-indictment depositions and after Hayes had been appointed counsel, the government's use of Koutchesfahani as an undercover agent runs afoul of *Massiah.* Hayes's coffee house statements to Koutchesfahani should have been suppressed.

## II.

As the majority's opinion amply demonstrates, however, the other evidence of Hayes's guilt was overwhelming. The error in admitting the coffee house statements at the trial was harmless beyond a reasonable doubt. Unfortunately, the same cannot be said for its role in Hayes's sentencing. The coffee house statements formed the basis of the obstruction of justice enhancement. Although I would affirm the conviction, I would remand to district court for re-sentencing with directions to to disregard the coffee house statements.