**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darnell HAYES, Defendant–Appellant.**

No. 98–50609.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1999.

Opinion Filed Sept. 8, 1999.

Order Granting Rehearing En Banc and Opinion Vacated Feb. 1, 2000.

Argued and Submitted En Banc June 22, 2000.

Filed Nov. 8, 2000.

Michael L. Crowley, San Diego, California, for the defendant-appellant.

Yesmin E. Saide, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: HUG, Jr., Chief Judge, and SCHROEDER, REINHARDT, FERNANDEZ, RYMER, T.G. NELSON, KLEINFELD, GRABER, W. FLETCHER, FISHER, and GOULD, Circuit Judges.

Opinion by Judge RYMER; Dissent by Judge REINHARDT.

RYMER, Circuit Judge:

Darnell Hayes was one of several targets of an investigation into a complicated, multi-party scheme to sell grades for classes that foreign students did not attend, perform course work for, or take exams in. The government asked for (and got) court approval to take material witness depositions of several of the foreign students so that they could go home. Hayes was notified and was represented by counsel. Meanwhile, the government wired a co-conspirator who agreed to cooperate and to allow the government to tape a conversation with Hayes. Hayes was indicted nearly a year later, and sought to exclude the tape on *Massiah* grounds. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The district court found no *Massiah* violation because the depositions and the non-custodial taped conversation occurred before formal criminal proceedings were initiated against Hayes. The panel majority agreed; Judge Silverman dissented. *United States v. Hayes*, 190 F.3d 939 (9th Cir.1999), *rehearing en banc granted, opinion vacated*, 201 F.3d 1255 (9th Cir. 2000).

Having reheard the matter en banc, we recognize that we are not writing on a clean slate. In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), and on numerous other occasions, the Supreme Court has clearly articulated the rule: "[T]he Sixth Amendment right to counsel does not attach until after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Because no formal charges were pending against Hayes at the time of the surreptitious taping, it follows that the district court correctly determined that *Massiah* was not implicated and Hayes's Sixth Amendment rights were not violated.

 As the remaining issues raised on appeal do not require reversal, we affirm.[1]

### I

Beginning in 1989, Sam Koutchesfahani solicited and accepted money from Middle Eastern foreign students to gain their admission to San Diego City College (SDCC) even though they did not meet SDCC's admissions criteria. He gave counterfeit documents to Richard Maldonado, an admissions officer, and paid him to issue fraudulent INS Form I–20s that falsely certified that the foreign students had met SDCC's admissions requirements. Then Koutchesfahani paid instructors at SDCC, Mesa College, and Palomar College to give passing grades to students who never attended classes or took any exams.

One of these instructors was Hayes, an adjunct professor at Mesa who taught classes in marketing and business. He was also approved by Ohio University, the University of Oklahoma, and Eastern Kentucky University to administer correspondence courses. Beginning in 1992, Hayes sold approximately sixty-five passing grades in his Mesa classes to approximately thirty-one foreign students who never attended class or completed class work and examinations. Although he never dealt with the students himself, Hayes was paid $150 per grade by Koutchesfahani for the Mesa classes, and $50 per course for thirty-four foreign students in eighty-seven correspondence courses for which he fraudulently certified the examinations as properly administered. For his part, Koutchesfahani received $109,000 from these students. As a result of Hayes's participation in the conspiracy, these foreign students were able to maintain their non-immigrant F–1 student status and to obtain college credits and degrees.

Hayes received between $11,513 and $14,150 in bribes from Koutchesfahani, but failed to report any of this income to the IRS or to State Unemployment officials. He also claimed "head of household" status with two exemptions at a time when he knew he qualified only for "single" status with one exemption, and failed to file any tax return at all for 1992.

At some point a criminal investigation was begun into the grade selling scheme, which stopped when Koutchesfahani and the foreign students found out about the investigation in the fall of 1994. However, Hayes and Koutchesfahani continued to talk. On November 30, 1995, Hayes received a target letter and consented to an interview by federal agents at his home, but told them a number of things that were untrue (for example, that Middle–

---

1. We adopt Parts III–VIII of the panel's unanimous opinion on these issues. *Hayes*, 190 F.3d at 946–47.

Eastern students attended class and he did not give passing grades to students who did not go to class; that no Middle–Eastern students were enrolled in Mesa classes in 1994; that money he received from Koutchesfahani was for marketing work on "pharmaceuticals" for Koutchesfahani's company; and that he personally supervised the students' correspondence exams at Mesa).

Later, when Hayes learned in March 1996 that Koutchesfahani was thinking about cooperating with the government, Hayes asked him not to cooperate against *him*. Nevertheless, Koutchesfahani did enter into a cooperation agreement and on May 5, 1996, allowed agents to monitor and record a conversation he had with Hayes at a coffee house. During the conversation, Hayes said that he planned to lie at trial.

Meanwhile, on November 15, 1995, material witness complaints were filed under seal charging Abdulla K. Al–Rumaithi, Khallfan J. Al–Romaithi, Khalfan S. Al–Romaithi and Ghanem J. Al–Romaithi as material witnesses under 18 U.S.C. § 3144, which allows for the arrest and detention of material witnesses but also provides that they may not be detained if their testimony can be secured by deposition.[2] Rule 15 of the Federal Rules of Criminal Procedure allows depositions to be taken "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial ..." and provides that if a witness is detained pursuant to § 3144 and

his deposition is ordered, the witness may be discharged by the court. The witnesses were arraigned November 16 and the conditions of release that were imposed included appearing to testify if subpoenaed and not leaving the United States without permission of the United States Attorney or the court. They were scheduled to graduate during the middle of May 1996 and to return to the United Arab Emirates. On April 19, 1996, the government filed a motion to take pre-indictment videotaped depositions of these four student witnesses, and to modify the conditions of release to allow them to return to their country after the depositions had been taken. In its motion, the government named Hayes and five other targets. Each target was given notice. Hayes's retained counsel neither objected to the motion nor attended the hearing. A magistrate judge granted the motion, "good cause appearing." The court's order directed "[a]ll parties" to attend each deposition, indicating that "[f]or purposes of this Order, the term 'parties' includes the United States Attorney, the material witnesses, and the following targets of the investigation: [five individuals and] ... Darnell Hayes." The order prescribed a number of conditions for videotaping depositions consistent with Fed.R.Civ.P. 28(a), 29, 30 and 32(c), and 18 U.S.C. § 3144. A few days before May 6, 1996, when the depositions were to begin, Hayes's privately-retained counsel substituted out and counsel was appointed for him. The depositions took place thereafter.[3]

On April 17, 1997, a federal grand jury indicted Hayes for conspiracy to defraud

---

**2.** Section 3144 provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title [providing for release or detention of a defendant pending trial]. No material witness may be detained because of inability to comply with any condition of

> release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

> 18 U.S.C. § 3144.

**3.** As it happens, the depositions were not used at trial.

the United States in violation of 18 U.S.C. § 371, and to commit mail fraud in violation of 18 U.S.C. §§ 1341, 1346 (Count 1); aiding and abetting mail fraud—*i.e.,* fraudulent mailings of grade reports, transcripts, and correspondence examination certifications—in violation of 18 U.S.C. §§ 2, 1341, 1346 (Counts 2–54); filing false tax returns in violation of 26 U.S.C. § 7206(1) (Counts 55–56); and failing to file a tax return in violation of 26 U.S.C. § 7203 (Count 57). Hayes moved to suppress the tape of his conversation with Koutchesfahani, but his motion was denied. His statements were admitted at trial, over Hayes's objections. After a jury trial, Hayes was convicted on all counts.

## II

■■■ Hayes argues that the tape recording of his conversation with Koutchesfahani was obtained in violation of *Massiah* because he had been served with a target letter on November 30, 1995, the government knew at least as of February 7, 1996 (when he was subpoenaed to appear before the grand jury) that Hayes was represented by counsel, and in May 1996 the government conducted depositions of material witnesses based on a court order. He submits that the government's invoking Rule 15 of the Federal Rules of Criminal procedure was the functional equivalent of an indictment, and that the trial process effectively began when the government sought to take the depositions. Thus, as he puts it, the government chose to create a "trial type situation," which, in his view, *Massiah* forbade it from doing.

The government counters that, although Hayes was a target, he was not accused of anything when Koutchesfahani was wired. It points out that it merely indicated in its motion to take the depositions that it *might* seek indictments against the targets, and that telling a person that he is a target (which Hayes had known since November 1996) and may be prosecuted does not trigger the Sixth Amendment's right to counsel. The government maintains that the investigation was ongoing and no charging decisions had been made at the time it became apparent that four of the students were material witnesses and that they would leave the country after completing their studies unless something was done. Accordingly, it sought permission to take these depositions under the combined authority of § 3144 and Fed.R.Crim.P. 15. The government acknowledges that Rule 15 clearly contemplates that depositions taken pursuant to its terms are taken post-indictment, when the Sixth Amendment rights to counsel and to confrontation will already have attached; however, it argues, *these* depositions were not simply Rule 15 depositions but rather were ordered "for good cause" in accordance with Rule 15 procedures, including those incorporated from the Federal Rules of Civil Procedure. Under these circumstances, it contends, the order scheduling the depositions cannot be considered the initiation of judicial proceedings for purposes of *Massiah* rights under the Sixth Amendment.

The Sixth Amendment provides that "[i]n all criminal *prosecutions,* the *accused* shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI (emphasis added). Literally, these prerequisites are not met here, as there was neither a "prosecution" nor was Hayes an "accused" at the time Koutchesfahani was wound up and wired to talk to him.

■■■ Right to counsel cases in general, and the *Massiah* line of cases in particular, involve incidents that occurred *after* the initiation of adversary criminal proceedings and that arose during a critical, *post-*indictment proceeding. As the Court explained in *Gouveia,* "our cases have long recognized that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." 467 U.S. at 187, 104 S.Ct. 2292. Then–Justice Rehnquist embraced for the majority the plurality's description of the right to counsel in *Kirby v. Illinois:*

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama* [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)] it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.

". . . [W]hile members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*Gouveia,* 467 U.S. at 187–88, 104 S.Ct. 2292 (quoting *Kirby,* 406 U.S. at 688–89, 92 S.Ct. 1877) (citations omitted) (alteration in original). He then stated:

That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal prosecutio[n]" and an "accused," but also with the purposes which we have recognized that the right to counsel serves. We have recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor."

*Id.* at 188–89, 92 S.Ct. 1877 (quoting *United States v. Ash,* 413 U.S. 300, 309, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)) (alterations in original). The opinion notes:

Although we have extended an accused's right to counsel to certain "critical" pretrial proceedings, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), we have done so recognizing that at those proceedings, "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both," *United States v. Ash, supra,* at 310, 93 S.Ct.

2568, in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade, supra,* at 224, 87 S.Ct. 1926.

*Id.* at 189, 92 S.Ct. 1877 (alteration in original). And adds:

Thus, given the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings "is far from a mere formalism." It is only at that time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Id.* (quoting *Kirby,* 406 U.S. at 689, 92 S.Ct. 1877) (citation omitted). "It is *this* point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby,* 406 U.S. at 690, 92 S.Ct. 1877 (emphasis added).

*Massiah* itself, of course, involved post-indictment contact. The defendant was indicted for violating the federal narcotics laws, retained a lawyer, pleaded not guilty, and was released on bail. While the defendant was free on bail, a federal agent succeeded by surreptitious means in listening to incriminating statements made by the defendant to his alleged co-conspirator, who was cooperating with the government, and the statements were introduced at trial. The Court held that a defendant is denied the basic protections of the Sixth Amendment "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him *after he had been indicted* and in the absence of his counsel." *Massiah,* 377 U.S. at 206, 84

S.Ct. 1199 (emphasis added). As it stated, "[a]ny secret interrogation of the defendant, *from and after the finding of the indictment,* without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." *Id.* at 205, 84 S.Ct. 1199 (emphasis added) (quoting *People v. Waterman,* 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961)).

■ The Court has consistently held that the right to counsel attaches only after the initiation of formal charges, reiterating this rule in different, but analogous, contexts. For example, in *Burbine,* where the defendant sought to exclude inculpatory statements made to the police after his family had retained an attorney but before formal charges had been brought, the Court made it clear that "the possibility that the encounter may have important consequences at trial, standing alone, is insufficient to trigger the Sixth Amendment right to counsel." *Burbine,* 475 U.S. at 432, 106 S.Ct. 1135. Instead, "the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor." *Id.* at 430, 106 S.Ct. 1135. The Court continued:

> Its purpose, rather, is to assure that in any "criminal prosecutio[n]," U.S. Const., Amdt. 6, the accused shall not be left to his own devices in facing the " 'prosecutorial forces of organized society.' " By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the "intricacies ... of law," is needed to assure that the

prosecution's case encounters "the crucible of meaningful adversarial testing."

Indeed, in *Maine v. Moulton* [474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)] decided this Term, the Court again confirmed that looking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel. There, we considered the constitutional implications of a surreptitious investigation that yielded evidence pertaining to two crimes. For one, the defendant had been indicted; for the other, he had not. Concerning the former, the Court reaffirmed that after the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel. The Court made clear, however, that the evidence concerning the crime for which the defendant had not been indicted—evidence obtained in precisely the same manner from the identical suspect—would be admissible at a trial limited to those charges. The clear implication of the holding, and one that confirms the teaching of *Gouveia,* is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges.

*Id.* at 430–31, 106 S.Ct. 1135 (citations omitted). Likewise in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Court considered whether statements provided to the police after McNeil's Sixth Amendment right to counsel had attached and had been invoked with respect to one armed robbery protected statements with respect to other offenses, and concluded that it did not "[b]ecause petitioner provided the statements at issue here before his Sixth Amendment right to counsel with respect to the [other] offenses had been (or even could have been) invoked." *Id.* at 176, 111 S.Ct. 2204. The reason is that the Sixth Amendment right to counsel is "offense specific" and "cannot be invoked once for all future prosecutions, for it does not at-

tach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* at 175, 111 S.Ct. 2204 (quoting *Gouveia,* 467 U.S. at 188, 104 S.Ct. 2292); *see also Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) (noting that "[i]n the instant case no charges had been filed on the subject of the interrogation, and our Sixth Amendment precedents are not applicable"); *Moore v. Illinois,* 434 U.S. 220, 228, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (right to counsel attached because preliminary hearing marked the initiation of adversary judicial criminal proceedings).

The law in this circuit is equally clear. In *United States v. Kenny,* 645 F.2d 1323 (9th Cir.1981), we explicitly rejected a *Massiah* challenge to a tape recording made by an informant of a conversation with a defendant (who was represented by counsel) before his indictment. As we noted, Kenny had not been charged, arrested or indicted at the time of the recording:

> The short answer to Kenny's contention that his right to counsel was breached is that the right to counsel is not viewed to attach prior to the initiation of adversary judicial proceedings against an accused. Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached.

*Id.* at 1338 (citation omitted). Similarly, we held in *United States v. DeVaughn,* 541 F.2d 808 (9th Cir.1976) (per curiam), that *Massiah* was not implicated by taping a telephone call made to a defendant after a felony complaint against him had been dismissed, but before he was prosecuted again.

Other circuits are in accord.[4] Indeed, the Sixth Circuit has recently had occasion

4. *See, e.g., United States v. Mapp,* 170 F.3d 328, 334 (2d Cir.1999), *cert. denied* 528 U.S. 901, 120 S.Ct. 239, 145 L.Ed.2d 200 (1999) (Sixth Amendment right to counsel did not attach when government placed a cooperating witness in Moore's holding cell after state charges had been filed but six months before federal prosecution was commenced); *United States v. Ingle,* 157 F.3d 1147, 1151 (8th Cir.1998) (statement made by Ingle to informant admissible even though he was represented by a court-appointed attorney because formal charges had not been initiated); *United States v. Lin Lyn Trading, Ltd.,* 149 F.3d 1112, 1117 (10th Cir.1998) (notepad seized by customs agents before defendants were indicted not protected by Sixth Amendment right to counsel); *Kight v. Singletary,* 50 F.3d 1539, 1548 (11th Cir.1995) (statements to police about a murder while Kight was in custody and charged with a robbery admissible because the Sixth Amendment right to counsel is "offense specific" and prosecution had not begun against him with respect to the murder); *Roberts v. Maine,* 48 F.3d 1287, 1290–91 (1st Cir.1995) (Sixth Amendment right to counsel not applicable to a blood/alcohol test because formal charges had not yet been brought for drunk driving); *United States v. Williams,* 993 F.2d 451, 456 (5th Cir.1993) (defendant's testimony before federal grand jury after being charged in state drug case did not violate her Sixth Amendment right to counsel in connec-tion with federal perjury prosecution which had not been initiated at the time); *United States v. Heinz,* 983 F.2d 609, 612 (5th Cir.1993) (taped telephone conversations with targets represented by counsel did not violate Sixth Amendment right to counsel before indictment); *United States v. Larkin,* 978 F.2d 964, 969 (7th Cir.1992) (Sixth Amendment right to counsel did not attach at pre-indictment custodial lineup although counsel should have been provided anyway); *United States v. Payne,* 954 F.2d 199, 203 (4th Cir.1992) (Sixth Amendment right to counsel invoked for tax offenses does not extend to drug and weapons offenses on which Payne had not been indicted so as to protect statements made to government agent); *Judd v. Vose,* 813 F.2d 494, 496–97 (1st Cir.1987) (questions by government agent after arrest and extradition hearing but before being formally charged did not violate Sixth Amendment right to counsel); *United States v. Sutton,* 801 F.2d 1346, 1365 (D.C.Cir.1986) (taping that occurred during investigatory stage after suspect had counsel but before initiation of any judicial proceedings did not trigger Sixth Amendment right to counsel as he was not an "accused"); *United States v. Reynolds,* 762 F.2d 489, 493 (6th Cir.1985) (statements after warrant had been obtained not protected by the Sixth Amendment right to counsel as no judicial proceedings had taken place).

to review the same Supreme Court teachings in *United States v. Moody*, 206 F.3d 609 (6th Cir.2000), *cert. denied*, — U.S. ——, 121 S.Ct. 301, 148 L.Ed.2d 241 (2000). There, the government conducted pre-indictment interviews with Moody, without the assistance of counsel, and government attorneys offered him a deal. The court, albeit reluctantly, held that Moody's Sixth Amendment rights did not attach even though by offering a specific plea bargain the U.S. Attorney's Office was committing itself to proceed with prosecution. As it explained, the government had not instituted formal adversary proceedings against Moody and "[t]he Supreme Court's holding that the Sixth Amendment right attaches only 'at or after the initiation of judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,' is a bright line test; it is a mandate that 'the Sixth Amendment right to counsel does not attach until after the initiation of formal charges.'" *Id.* at 614 (citations omitted).

Here, there is no dispute that no formal charge, preliminary hearing, indictment, information, or arraignment had occurred when Hayes met Koutchesfahani at the coffee shop. The only question is whether asking for an order to take the depositions (thus to free the witnesses from detention), which included notice to the targets so that they could appear (thus to make the deposition potentially useable at trial, if there were one), is the "functional equivalent" of the initiation of formal charges. We think not, under the Supreme Court's test. Asking for and taking the depositions did not formally initiate any criminal proceeding against Hayes. He was not thereby charged, indicted, or arraigned—and may

never have been.[5] Instead, the government remained an investigator rather than a prosecutor and Hayes was a target, not "the accused."

By the same token, it cannot matter that witness depositions have the trappings of trial about them, or that they are normally (or even, presumptively) taken only after formal charges are brought when the defendant's Sixth Amendment rights have already attached.[6] Although Rule 15 depositions are "for use at trial," and contemplate the "defendant's" presence (along with his counsel), examination, cross-examination, production of prior statements, and trial-type limitations on the scope and manner of taking testimony, they are not *the* trial. There may never be a trial; even so, depositions may be used only *if* the witness is unavailable within the meaning of Rule 804(a) of the Federal Rules of Evidence, *if* the witness does not show up or does show up but gives inconsistent testimony, and *if* the testimony is relevant to the charges. None of these things was (or could have been) known at the time Hayes's conversation was taped. Therefore, *Massiah* was not violated for, "until such time as the " 'government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified' " the Sixth Amendment right to counsel does not attach." *Burbine*, 475 U.S. at 431, 106 S.Ct. 1135 (quoting *Gouveia*, 467 U.S. at 189, 104 S.Ct. 2292 (quoting *Kirby*, 406 U.S. at 689, 92 S.Ct. 1877)).

Were *resemblance to trial* the standard, we would have less trouble saying that the Sixth Amendment was triggered. But it isn't. Instead, we believe the Supreme

5. There is no evidence in this case of purposeful delay in seeking an indictment.

6. Hayes did not contest the propriety of requesting or taking the depositions as such. Because the depositions were not admitted at trial, we have no issue before us about their validity. However, if the depositions were prematurely or otherwise improperly request-

ed or ordered because there was no "case" and no "defendant" under Rule 15, then the judicial proceeding from which they resulted would be of no more consequence for purposes of the Sixth Amendment's right to counsel than the complaint, later dismissed and then reinstated, in *DeVaughn*. *See DeVaughn*, 541 F.2d at 808.

Court meant what it said in *Ash*, that *Kirby* "forecloses application of the Sixth Amendment to events before the initiation of adversary criminal proceedings." *Ash*, 413 U.S. at 303 n. 3, 93 S.Ct. 2568. Beyond this, the fact that pre-indictment deposition testimony may have consequences at trial is insufficient to cause the right to counsel to attach. *Burbine* makes this clear. *Burbine*, 475 U.S. at 431, 106 S.Ct. 1135. Although *post-indictment* Rule 15 depositions might constitute a "critical stage" in a prosecution—requiring the presence of counsel—because of the potential consequences of such depositions at trial, that fact does not inform our analysis of whether a *pre-indictment* motion to take such depositions constitutes the initiation of formal charges. *See id.* at 431–32, 106 S.Ct. 1135. Being a *target* is not enough, either. As the Court has emphasized, the Sixth Amendment "attaches only at or after the initiation of adversary judicial proceedings *against the defendant*." *Gouveia*, 467 U.S. at 187, 104 S.Ct. 2292 (emphasis added); *see also Kenny*, 645 F.2d at 1338. While adversary judicial proceedings had been initiated against the *witnesses*, none had been initiated against *Hayes*. And we cannot say that the government was formally charging Hayes (or any of the other targets) or was committing to do so when it sought to take the

depositions of departing students, because the depositions served only to preserve their testimony for trial if there were a trial and the students did not return.

 Finally, it has been suggested that Hayes's *Massiah* rights were engaged because counsel was appointed for him when his retained counsel stepped aside. The argument is that the Criminal Justice Act (like Rule 15) contemplates that representation be provided for persons who are charged or who are entitled to appointment of counsel under the Sixth Amendment and that, because counsel was appointed for Hayes, his right to counsel must have attached in order to meet the CJA requirements. *See* 18 U.S.C. § 3006A. The record does not indicate on what basis the magistrate judge appointed counsel for Hayes, but that is of no moment because, in any event, the argument begs the question. The appointment of counsel does not create the right to counsel. The Supreme Court's test for when the right to counsel attaches focuses on the initiation of formal criminal charges; the appointment of counsel does not, and indisputably cannot, formally initiate criminal proceedings against anyone. Nor does the appointment of counsel somehow establish that formal charges have been initiated, if they have not been.[7] Put differently, the

---

7. To hold otherwise in this case would not only be contrary to *Burbine* and *Illinois v. Perkins*, 496 U.S. at 299, 110 S.Ct. 2394, where the Court held that the Sixth Amendment right to counsel did not attach when an undercover agent questioned defendant in his cell because "no charges had been filed on the subject of the interrogation," but would put us in conflict with the Eighth Circuit, which considered a similar conundrum in *United States v. Ingle*, 157 F.3d 1147 (8th Cir.1998). There, Ingle was being taken from one prison facility to another for interrogation and possible testimony before the grand jury when he was engaged in conversation by other inmates who were acting as government informants and were wired. Ingle made tape-recorded admissions. As the Eighth Circuit explained:

> Given the purposes for which Ingle had consented to be brought to Fort Smith—custodial interrogation and possible testi-

mony before the grand jury—appointed counsel was needed to protect the Fifth Amendment ban on compelled self-incrimination. But neither custodial interrogation nor a grand jury appearance triggers the Sixth Amendment right to counsel absent the initiation of formal charges, even if the target of those investigative actions is represented by counsel. Nor do such formal investigative actions preclude government investigators from thereafter using informants and undercover agents to elicit incriminating admissions from the suspect.

The existence of a suspect's attorney-client relationship does. not, by itself, trigger the Sixth Amendment right to counsel. In this case, neither the fact that counsel was appointed for Ingle nor the standard form of appointment order used by the court establishes that the murder investigation had proceeded to the point where the Sixth Amendment right to counsel· must attach because

Sixth Amendment right to counsel does not itself turn on whether a target has counsel. Indeed, we held the opposite in *Kenny* with respect to retained counsel, and it cannot make a difference of constitutional magnitude that counsel is appointed instead of retained. Moreover, there are many different reasons counsel might be appointed, some of which are not constitutionally compelled, *cf. United States v. Larkin*, 978 F.2d 964, 969–70 (7th Cir. 1992) (urging appointment of counsel for suspects during pre-indictment line ups, "notwithstanding the absence of constitutional compulsion"), and some of which involve constitutional rights other than the Sixth Amendment right to counsel. For example, in light of the Fifth Amendment's prohibition against compelled self-incrimination, counsel is often appointed for purposes of advising a target who has been called before a grand jury, *see, e.g., Ingle*, 157 F.3d at 1151, despite the fact that grand jury investigation does not trigger the Sixth Amendment right to counsel, *see id.; In re Grand Jury Investigation*, 182 F.3d 668, 671 (9th Cir.1999) ("The Sixth Amendment is ... inapplicable to a grand jury witness, because he has not yet become an 'accused.'"). Hayes was in this very position; he was the target of a grand jury investigation during the time in question, but had not yet been the subject of a formal charge, preliminary hearing, indictment, information or arraignment. Under these circumstances, the Sixth Amendment right to counsel did not apply.

■ In sum, the Supreme Court, this court, and every other circuit to consider a similar issue has adhered to the rule that adversary judicial proceedings are initiated

"by way of formal charge, preliminary hearing, indictment, information, or arraignment." This is a clean and clear rule that is easy enough to follow: Initiating any of these specific proceedings "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby*, 406 U.S. at 690, 92 S.Ct. 1877. We are loath to engraft some new, pre-indictment proceeding onto the rule, thereby making it no longer clean and clear—and outside the clear boundaries the Supreme Court has established.

This said, we can't help being somewhat queasy because it looks like the government is trying to have its cake and eat it too—on the one hand seeking the court's authority to take depositions that the Federal Rules of Criminal Procedure contemplate are available only after formal charges have been brought, but on the other hand, setting out to tape a target's incriminating statements which it can only do if formal charges have not been brought. However, it seems clear this is not a *Massiah* problem. While it may present some *other* kind of problem, no other theory has been advanced.[8] We simply hold that the Sixth Amendment right upon which Hayes seeks reversal did not attach before criminal proceedings were formally instituted against him, in his case when an indictment was returned.

### III

■ Alternatively, Hayes maintains that the recording ran afoul of his rights under *Miranda v. Arizona*, 384 U.S. 436,

---

"the government has committed itself to prosecute, and ... defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." Accordingly, the district court correctly concluded that the tape-recorded conversation did not violate Ingle's Sixth Amendment right to counsel. *Id.* at 1151–52 (citations omitted) (alteration in original).

8. We express no opinion on the issue, but note that in declining to stretch the Sixth Amendment to pre-indictment identification procedures in *Kirby*, 406 U.S. at 691, 92 S.Ct. 1877, the Supreme Court suggested that when a person has not been formally charged with a criminal offense, prejudicial procedures may nevertheless in some circumstances run afoul of the Due Process Clause of the Fifth and Fourteenth Amendments.

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This cannot be so, as Hayes voluntarily met Koutchesfahani at a coffee house. It was a non-custodial encounter, to which *Miranda* does not apply. *See id.* at 444, 86 S.Ct. 1602; *see also McNeil v. Wisconsin,* 501 U.S. 171, 177–81, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

## CONCLUSION

Seeking and obtaining a court order for pre-indictment witness depositions did not initiate "adversary judicial proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" against Hayes. Nor does it matter that he had appointed counsel. As the touchstone of Sixth Amendment analysis under *Massiah, Gouveia,* and *Moran* is the bringing of formal charges, and none had been brought against Hayes at the time his conversation with Koutchesfahani was surreptitiously taped, his *Massiah* rights were not implicated and the Sixth Amendment right to counsel was not violated by introduction of his statements at trial.

AFFIRMED.

REINHARDT, Circuit Judge, with whom Chief Judge HUG and Circuit Judges GRABER and W. FLETCHER join, dissenting:

The majority confesses to being "somewhat queasy" about today's decision, and rightly so: no case, until today, has suggested that the government may conduct videotaped depositions of key prosecution witnesses for use as substantive evidence at trial while *simultaneously* eliciting incriminating statements from a defendant outside his counsel's presence. The majority insists that its "clean and clear rule"—that "adversary judicial proceedings" may be initiated only "by way of formal charge, preliminary hearing, indictment, information, or arraignment"—is both compelled by Supreme Court precedent and consistent with "every other circuit to consider a similar issue." Maj. op.

at 675. But no Supreme Court case, and none of the lower court decisions cited by the majority, even remotely envisioned the circumstances that we are faced with in this case, where, rightly or wrongly, "*the trial had begun*—and prosecution witnesses [had been] called to the stand—*prior to the indictment.*" *United States v. Hayes,* 190 F.3d 939, 948 (9th Cir.1999) (Silverman, J., dissenting), *reh'g en banc granted, opinion vacated,* 201 F.3d 1255 (9th Cir.2000) (emphasis added). Because the judicial authorization of the videotaped depositions in this case constituted the commencement of "adversary judicial proceedings" in any meaningful sense of those words, I would hold that Hayes's right to counsel had attached by the time the government dispatched its undercover agent to extract his recorded confessions on May 5, 1996. Accordingly, I would reverse Hayes's conviction and sentence as unlawfully obtained in violation of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

I.

The Supreme Court has held repeatedly that "once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer v. Williams,* 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *see also United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. "Adversary proceedings" typically commence "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer,* 430 U.S. at 387, 97 S.Ct. 1232. However, "this was not the typical case." *Hayes,* 190 F.3d at 948 (Silverman, J., dissenting). In this case, the government took the extraordinary step of initiating adversary judicial proceedings—in the form of judicially authorized videotaped depositions preserved for use as substantive evidence at Hayes's trial—prior to Hayes's formal indictment. In

short, the adversary proceedings had begun.

Rule 15 of the Federal Rules of Criminal Procedure permits either "party" in a criminal case, in "exceptional circumstances" and "in the interest of justice," to take and preserve testimony by deposition for use as substantive evidence at trial. Fed.R.Crim.P. 15(a). The rule specifies that "the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself," and it refers throughout to the "defendant" and the "case." Id. at (a) and (d). The government concedes that Rule 15 plainly contemplates a post-indictment occurrence at which the defendant's right to counsel has indisputably attached, and that seems correct because, prior to indictment, there is no "defendant," "case," or even "party." In Hayes's case, however, at the government's request and for the government's convenience, the depositions were conducted prior to his formal indictment. In the majority's view, the fact that the depositions were ordered and conducted prior to Hayes's indictment is wholly dispositive of the Sixth Amendment question, because "the government remained an investigator rather than a prosecutor." Maj. op. at 673. However, this analysis is inconsistent with what actually happened in Hayes's case and with the text and purpose of Rule 15.[1]

As Judge Silverman recognized in his dissenting opinion, unlike civil depositions, Rule 15 depositions are not taken for discovery or investigatory purposes but "for the unabashed purpose of preserving testimony for use against [a defendant] at trial." Hayes, 190 F.3d at 948 (Silverman, J., dissenting); see also Moore's Federal Practice § 615.02[1] (3d ed. 1999) ("Unlike depositions taken in civil litigation, criminal depositions are intended to preserve testimony ... and are not meant as discovery devices."); United States v. Cutler, 806 F.2d 933, 936 (9th Cir.1986) (same); United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir.1993) (same). That is precisely what occurred here. It is not surprising that only one week after Hayes's indictment was returned, the government filed a "Motion to Admit Deposition Testimony of Material Witness at Trial." The majority's assertion that the government remained an "investigator" rather than a prosecutor during the taking of the depositions is simply incorrect. Rule 15 depositions are fully useable as substantive evidence at trial, and nothing prevents the government from obtaining a conviction on the basis of Rule 15 depositions alone.[2] In fact, the Third Circuit has characterized Rule 15 depositions as a "critical stage of the prosecution" during which due process rights are implicated. United States v. Gifford, 892 F.2d 263, 265 (3d Cir.1989).

Because Rule 15 depositions literally become a part of the defendant's trial from the moment they are taken, defense coun-

1. The organizational structure of the Federal Rules of Criminal Procedure suggests that Rule 15 does not contemplate pre-indictment depositions. The rules are organized chronologically, beginning with the rule that describes a complaint. See Fed.R.Crim.P. 3. The rules then follow a time line from that point through the arrest or summons on complaint, initial appearance, indictment, arraignment, pre-trial procedures, trial, and judgment. Rule 15 is located in the section entitled "Arraignment," which follows directly the section of the rules governing "Indictment and Information." (Within the "Arraignment" section, Rule 15 follows rules concerning joinder of indictments for trial.) Accordingly, the structure of the rules indicates that depositions under Rule 15 are intended to take place after a defendant has been indicted and thus underscores the adversarial nature of the Rule 15 proceedings.

2. The majority's assertion that "adversary judicial proceedings had been initiated against the witnesses," but that "none had been initiated against Hayes," maj. op. at 673–74, is puzzling, to say the least. The witnesses' deposition testimony was preserved for use against the targets of the investigation, not for use against the witnesses themselves. Rule 15 depositions are designed and authorized as a substitute for live trial testimony against the defendant. They have no other purpose.

sel's presence during the taking of the depositions is not a discretionary courtesy but a constitutional necessity. The magistrate understood as much when he appointed counsel to represent Hayes following his order granting the government's motion to depose material witnesses. The majority appears to suggest that Hayes's only entitlement to appointed counsel for the Rule 15 depositions derived from the Criminal Justice System Act, and not from the Constitution. *See* maj. op. at 674 (citing 18 U.S.C. § 3006A). But that cannot be so. If it were, then the government, without violating the Sixth Amendment, could have deposed the material witnesses and convicted Hayes on the basis of their deposition testimony *alone*, even if Hayes had been unrepresented by counsel at the depositions.

The cases upon which the majority chiefly relies as support for its allegiance to a "bright-line rule" cannot control the resolution of this case, because the depositions at issue here are altogether unlike any of the pre-indictment events that the Supreme Court has been called upon to consider. Although the Court has declined invitations to extend the Sixth Amendment right to counsel to pre-indictment events such as police-station identifications, *see Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); prison administrative detention, *see United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); and the failure by police to inform a suspect of his attorney's efforts to contact him, *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), in no case has the Court considered the constitutional consequences of anything resembling the court-ordered, pre-indictment taking and preserving of *actual trial testimony.* Moreover, the factors that the Court has examined in determining which pre-trial events mark the initiation of adversary judicial proceedings point strongly towards the attachment of the right to counsel in this case. The Court has explained that the "right to counsel exists to protect the

accused during *trial-type confrontations* with the prosecutor." *Gouveia,* 467 U.S. at 190, 104 S.Ct. 2292 (emphasis added). In extending the right to counsel to certain "critical" pretrial proceedings, the "test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash,* 413 U.S. 300, 313, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The Court has acknowledged the significance of the "changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered parts of the trial itself." *Id.* at 310, 93 S.Ct. 2568. None of those pretrial events has been more a part of the trial itself than a material witness deposition, which is produced before the jury during trial as substantive witness testimony.

The real difficulty that this case presents is that a procedure for taking trial testimony by deposition in exceptional circumstances, plainly designed for use *after* indictment, was used *before* indictment pursuant to the government's request and the magistrate's order. This anomaly raises the question whether the possible impropriety of the magistrate's order might in some way affect the Sixth Amendment implications of the government's actions in this case. First, I should note that, in light of the text and purpose of Rule 15, it is extremely doubtful that its drafters meant to authorize the taking of material witness depositions before indictment. However, the legality of the taking of the depositions was neither challenged below nor raised on this appeal and, in my view, we should not decide that issue *nostra sponte,* in part because the result would be the same whether or not pre-indictment depositions are permitted under the rule.

If the government's conduct in obtaining authorization for pre-indictment depositions was unusual but not unlawful—that is, even if the Rules of Criminal Procedure

do not *prohibit* the taking of pre-indictment depositions for use as substantive evidence against targets of ongoing investigations—then I have no difficulty concluding that, because the depositions are manifestly "adversary judicial proceedings," the Sixth Amendment right to counsel must attach regardless of when they are conducted. Once material witness depositions have been ordered, the target or defendant "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural law." *Gouveia,* 467 U.S. at 189, 104 S.Ct. 2292. The government may not circumvent the Sixth Amendment's protections merely by electing to conduct material witness depositions before, rather than after, indictment.

If, however, pre-indictment material witness depositions are *not* authorized under Rule 15, and the magistrate's order in this case was improper, it could be argued that the depositions were of no legal effect whatsoever and therefore did not trigger Hayes's right to counsel. The majority suggests as much in a footnote, equating the prematurely ordered Rule 15 depositions in this case with the dismissed felony complaint that formed the basis of an unsuccessful *Massiah* claim in a prior Ninth Circuit case. *See* maj. op. at 673 n. 6 (citing *United States v. DeVaughn,* 541 F.2d 808 (9th Cir.1976) (per curiam)). In *DeVaughn,* the government filed, then dismissed, a felony complaint against the defendant in the same month. Some time later, the government enlisted an undercover agent to record the defendant's incriminating statements and introduced those statements in a subsequent prosecution. We properly rejected the defendant's *Massiah* claim, because no adversary judicial proceedings of *any* kind were in effect against the defendant at the time the recordings were obtained. *See id.* at 810.

Here, precisely the opposite is true. Whether authorized or not, material witness depositions were ordered, and they were taken. Although, in the end, the depositions were not used at Hayes's trial, the government certainly *could* have used them had it so chosen and had Hayes failed properly to object. Such use, without objection, is far from implausible, as each side might well find something helpful in a particular deposition and each might reasonably conclude that, on balance, the benefit that it derived from the introduction of that particular deposition into evidence outweighed whatever detriment might result. In such a case, we might conceivably decide to correct the trial court's plain error in admitting the improper deposition testimony, but we might also conclude that the error, if any, was harmless. Or, as is most likely, we might decide (as I believe we should decide here) that we would not raise the issue on our own and resolve an important question that the parties did not wish us to consider. It therefore would be incorrect to characterize prematurely conducted depositions as having "no legal effect"; they could well become a part of a defendant's trial. To put it differently, the pre-indictment depositions in Hayes's case may well have been *voidable,* but they were not *void.* The violation of Rule 15 did not, by itself, nullify the deposition proceedings.

In short, what practical use will ultimately be made of pre-indictment depositions may depend on what transpires when they are taken. Surely, whether constitutional rights attach as a result of the commencement of the adversary process cannot depend on the possibility that the information obtained through that particular aspect of the process may turn out not to be admitted, or even admissible, at trial. The question that we must resolve is not whether the depositions themselves, if objected to, could have been introduced at Hayes's trial, but whether the premature initiation of adversary judicial proceedings triggered Hayes's right to counsel under the Sixth Amendment. In my view, whether the deposition procedure employed in this case was proper or not,

once the federal court invoked its power and authority to initiate the taking of evidentiary testimony for substantive use against Hayes at trial, adversary judicial proceedings had been commenced and Hayes's right to counsel attached.[3]

Finally, it bears mention that the majority's contention that "[o]ther circuits are in accord" with today's holding is both misleading and inaccurate. *See* Maj. Op. at 672 and n. 4 (collecting cases). First, in no case cited by the majority has a court considered the Sixth Amendment consequences of a pre-indictment judicial proceeding that preserves testimony for substantive use at trial against a target of an ongoing investigation—in short, that commences the adversary process. Second, some of the cases cited by the majority actually reject the majority's "clean and clear rule" that the right to counsel can attach *solely* "by way of formal charge, preliminary hearing, indictment, information, or arraignment." Maj. op. at 675; *see Roberts v. Maine,* 48 F.3d 1287, 1291 (1st Cir.1995) ("We recognize the possibility that *the right to counsel might conceivably attach before any formal charges are made, or before an indictment or arraignment,* in circumstances where the government had crossed the constitutionally significant divide from factfinder to adversary.") (citations omitted) (emphasis added); *United States ex rel. Hall v. Lane,* 804 F.2d 79, 82 (7th Cir.1986) ("This circuit has carefully left open the question of whether a party in police custody may ever have a Sixth Amendment right to counsel at a line-up held *prior to the initiation of formal adversary judicial proceedings* . . . ."). Moreover, we ourselves have stated previously that the "Sixth Amendment can apply when the government's conduct occurs pre-indictment." *In re Grand Jury Proceedings (Goodman),* 33 F.3d 1060, 1062 (9th Cir.1994). The majority properly may claim to have

simplicity on its side, but it can make no such claim regarding precedent—or the Constitution.

In the case before us, the majority's mechanical and formalistic approach is simply inadequate to evaluate, let alone preserve, the constitutional values at stake. True, the majority's "clean and clear rule" will vindicate defendants' Sixth Amendment rights in ordinary cases. But this is not an ordinary case. Here, because the government took the highly unusual step of setting in motion Hayes's trial before bothering to indict him, the majority's rule, with its inflexible barrier to the invocation of Sixth Amendment rights, falls short of what the Constitution demands. The plain fact is that Hayes's right to counsel attached when the magistrate ordered the taking of material witness depositions. As a result, the government violated Hayes's Sixth Amendment rights when it sent its agent to elicit and record his incriminating statements on May 5, 1996.

## II.

Neither the government nor the majority disputes Hayes's claim that, if his right to counsel *did* attach by way of the Rule 15 deposition order, the undercover recordings were obtained unlawfully. That is because, once it is understood that adversary judicial proceedings were in fact initiated against Hayes, "this case falls squarely within the prohibitions of *Massiah.*" *Hayes,* 190 F.3d at 948 (Silverman, J., dissenting). In *Massiah,* the Supreme Court reversed the petitioner's conviction and suppressed his incriminating statements to a cooperating witness because they had been "deliberately elicited" by the government after adversary proceedings had been commenced and in the absence of his counsel. *Massiah,* 377 U.S. at 206, 84 S.Ct. 1199. The Court has reaf-

---

**3.** Consistent with *DeVaughn,* the case on which the majority relies, had the order for depositions been withdrawn or overruled before indictment, the defendant's Sixth Amend-

ment rights would have lapsed—i.e., not attached with respect to *future* events—until some form of adversary proceedings were reinstituted.

firmed *Massiah*'s prohibition in subsequent cases. *See Brewer*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424; *Henry*, 447 U.S. 264, 100 S.Ct. 2183.

In this case, Sam Koutchesfahani, the government's cooperating witness, initiated the May 5 encounter with Hayes. He wore a recording device at the government's behest. Throughout the conversation, Koutchesfahani questioned Hayes about how he intended to respond to the government's evidence against him. In fact, Hayes's encounter with Koutchesfahani was nearly identical to the encounter that formed the basis of the *Massiah* case itself.

· Because Hayes's incriminating statements to Koutchesfahani were obtained in clear violation of the *Massiah* rule, they should have been suppressed.

### III.

Hayes's conviction and sentence must be reversed unless the government can establish beyond a reasonable doubt that the *Massiah* violation was harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The government's case depended in large part on the testimony of witnesses who had received either immunity from prosecution or promises that the government would recommend sentencing reductions in exchange for their cooperation. Aware of the credibility problems of its central witnesses, the government placed great reliance on Hayes's own recorded statements. The government played the undercover recording in its entirety to the jury and devoted much of its closing statement and rebuttal to arguing for Hayes's guilt based on his taped statements, asking the jurors, for example: *"Does that sound like somebody who's innocent? . . . . Does that sound like an innocent man? That sounds like a man who's trying to cover*

up his crime. Then he admits on the tape that he took the money."

Multiple references to the undercover recordings during closing would have carried particular force, as they were among the final statements made to the jurors before deliberation. Moreover, because the defendant's statements "come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct," they constitute "the most probative and damaging evidence that can be used against him." *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citation and internal quotation marks omitted). In these circumstances, it is "impossible to say . . . beyond a reasonable doubt" that admission of Hayes's statements was harmless. *Id.* at 302, 111 S.Ct. 1246. Therefore, Hayes's conviction and sentence must be reversed.

### IV.

Today's holding adheres to a convenient formalism that is incapable of accommodating the highly unusual circumstances of this case. The majority's insistence on a bright-line rule, without exception, not only works an injustice against Hayes, but may prevent this court from responding appropriately to some as-yet-unforeseen pre-indictment event with even more disturbing Sixth Amendment implications. Because I believe that the government's use of an undercover agent to subvert Hayes's Sixth Amendment right to counsel resulted in a conviction that was unconstitutionally obtained, I respectfully dissent.[4]

---

**4.** Because we must first reach the sufficiency-of-the-evidence question, I concur with the majority's decision on that point. I do not,

however, reach any other issue not discussed in this dissent.